IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EARNEST BARNARD CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-102 |
| | ) | |
| CAPTAIN BRANCH, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, seeks to proceed *in forma pauperis* ("IFP") in this action filed pursuant to 42 U.S.C. § 1983. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's request to proceed IFP be **DENIED**, (doc. no. 2), and this case be **DISMISSED** without prejudice.

**I.   Background**

A prisoner attempting to proceed IFP in a civil action in federal court must comply with the mandates of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996).  28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"This provision of the PLRA, commonly known as the three strikes provision, requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998) (internal citations omitted), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007); see also Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1726 (U.S. 2020) ("The point of the PLRA, as its terms show, was to cabin not only abusive but also simply meritless prisoner suits."). The Eleventh Circuit has upheld the constitutionality of § 1915(g) because it does not violate an inmate's right to access the courts, the doctrine of separation of powers, an inmate's right to due process of law, or an inmate's right to equal protection. Rivera, 144 F.3d at 721-27.

**II.     Discussion**

    **A.     Dismissal Is Warranted Because Plaintiff Has Three Strikes Under § 1915(g)**

Plaintiff concedes he has previously had at least three cases dismissed as frivolous, malicious, or for failure to state a claim. (Doc. no. 1, p. 3.) A review of Plaintiff's history of filings confirms he has brought at least three actions or appeals that were dismissed and count as strikes: (1) Clayton v. Williams, No. 6:17-cv-070 (S.D. Ga. Dec. 6, 2017) (dismissed for failure to state a claim and failure to follow court order); (2) Clayton v. Williams, No. 6:16-cv-151 (S.D. Ga. Nov. 14, 2017) (dismissed for failure to state a claim and failure to follow court order); and (3) Clayton v. Williams, No. 6:16-cv-174 (S.D. Ga. Mar. 20, 2017) (dismissed for failure to state a claim and failure to follow court order). See also Clayton v. Williams, No. 17-11470, 2017 WL 8776468 (11th Cir. 2017) (*per curiam*) (three judge panel finding appeal frivolous); Clayton v. Allen, CV 618-005 (S.D. Ga. May 9, 2018) (dismissing

for three strikes under § 1915(g)). Because Plaintiff has at least three strikes, he cannot proceed IFP unless he can demonstrate he qualifies for the "imminent danger of serious physical injury" exception to § 1915(g). Mitchell v. Nobles, 873 F.3d 869, 873 (11th Cir. 2017).

### B. Plaintiff Does Not Qualify for the Imminent Danger Exception

In order to come within the imminent danger exception, a prisoner must be in imminent danger of serious physical injury at the time he files suit in district court, not at the time of the alleged incident that serves as the basis for the complaint. Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999). The Court must consider "not whether each specific physical condition or symptom complained of might constitute serious injury, but, rather, whether the complaint, as a whole, raises sufficient allegations." Wright v. Sprayberry, 817 F. App'x 725, 728 (11th Cir. 2020) (*per curiam*) (citing Mitchell, 873 F.3d at 874). General or conclusory allegations are insufficient to satisfy the imminent danger exception. See Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004) (citing as persuasive Eighth Circuit case law that general assertion of two episodes of working in inclement weather as basis for claim defendants were attempting to kill an inmate "is insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Moreover, complaints of past injuries or vague claims of possible danger are insufficient to satisfy the exception. Jones v. Oliver, No. 7:24-cv-00097, 2024 WL 4933336, at *1 (M.D. Ga. Dec. 2, 2024). "The alleged imminent injury must be sufficiently serious, that is, severe or life-threatening," and the imminent danger exception is to be applied only in genuine emergencies. Id. (internal citations and quotation marks omitted).

In his complaint bearing a signature date of October 11, 2025, Plaintiff describes one event on September 30, 2025, where Defendant Branch is alleged to have approached Plaintiff's cell and without cause or warning, sprayed Plaintiff with OC spray and then refused to allow him to decontaminate or receive any medical attention. (Doc. no. 1, pp. 6-7, 9.) Plaintiff alleges Defendant Branch used this excessive force against him in retaliation for filing grievances and another lawsuit pending in this Court.[1]  (Id. at 7.)  Plaintiff also alleges this September 30th incident violated his due process rights.  (Id.)

Plaintiff's allegations concerning a one-time interaction with Defendant Branch are insufficient to satisfy the imminent danger exception.  Although Plaintiff alleges the use of OC spray was unwarranted and connected with a threat regarding a separate lawsuit, he does not allege serious ongoing physical injury, or a pattern of misconduct such that the Court can conclude there is a likelihood of imminent serious physical injury.  Although the Court understands Plaintiff to allege he experienced choking, burning eyes, and other general discomfort at the time of the alleged spraying, there is nothing other than Plaintiff's conclusory allegations that he still had these general issues nearly two weeks after the event when he filed his complaint.  Moreover, such allegations appear to conflict with Plaintiff's other assertions that he was eventually able to decontaminate. (Doc. no. 1, p. 6.)  To the extent Plaintiff alleges that he needs current medical treatment as a result of the September 30th incident, he does not allege Defendant Branch is responsible for providing that treatment or is otherwise responsible for preventing him from seeking or obtaining treatment.  Rather, the crux of Plaintiff's

---

[1] Notably, in that other lawsuit, Clayton v. Kellom, CV 325-009 (S.D. Ga. Feb.10, 2025), Plaintiff submitted a Disciplinary Report showing he was charged with attempted escape on September 30, 2025, and was alleged to have tampered with his cell lock in order to unlock his cell door. CV 325-009, doc. no. 54, p. 2.

4

complaint is the allegation that Defendant Branch used OC spray against Plaintiff without reason on September 30, 2025. See Daker v. Robinson, 802 F. App'x 513, 515 (11th Cir. 2020) (*per curiam*) (rejecting invocation of imminent danger exception based on allegations "too attenuated from the crux of the complaint" and explaining danger must be "fairly traceable to violation of law alleged in the complaint") As Plaintiff has not alleged Defendant Branch, the only named Defendant, is in charge of his on-going medical treatment, or lack thereof, he does not satisfy the imminent danger exception.

Likewise, as to Plaintiff's due process allegations, they are tied only to the four days after the September 30th incident, and although Plaintiff blames Defendant Branch for his circumstances of having to stay in a contaminated cell, he does not allege this Defendant was responsible for anything other than improperly using excessive force against him on one occasion. Stated otherwise, the only named Defendant is not alleged to have been in charge of his showers for four days or responsible for denying him supplies to clean his cell of the OC spray, let alone is this person alleged to now be in charge of such matters.

In sum, Plaintiff's complaint describes a one-time use of force by Defendant Branch and subsequent delay by unidentified officials in carrying out decontamination procedures or providing medical treatment. There are no allegations of a continuing pattern of misconduct by Defendant Branch, and Plaintiff does not allege Defendant Branch is responsible for his alleged continuing issues with the denial of medical care for any specific, serious condition. As none of Plaintiff's allegations show he is in imminent danger of serious physical injury as a result of Defendant Branch's actions on September 30th, he is not exempted from the three strikes rule. See Odum v. Bryan Cnty. Jud. Cir., No. CV 4:07-181, 2008 WL 766661, at *1 (S.D. Ga. Mar. 20, 2008) (requiring specific allegations grounded in specific facts indicating

injury is imminent). Thus, Plaintiff fails to demonstrate he should be excused from paying the full filing fee under the "imminent danger" exception to § 1915(g)'s three strike rule.

    **C.    Even if Plaintiff Did Not Have Three Strikes or If the Court Were to Assume He Satisfies the Imminent Danger Exception, His Case Is Subject to Dismissal Because He Admits He Did Not Exhaust Administrative Remedies**

                1.    **The Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Fed. Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).

Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159; see also McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (per curiam) ("The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." (citation omitted)).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

### 2. Administrative Grievance Procedure

Inmates like Plaintiff under the supervision of the Georgia Department of Corrections ("DOC") are subject to the Statewide Grievance procedure governed by the version of the DOC Standard Operating Procedure that resulted in the promulgation of Policy Number

7

("PN") 227.02, which became effective May 10, 2019.[2] The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e).

---

[2]The DOC policy cited herein is publicly available. See https://public.powerdms.com/GADOC/documents/105711 (last visited Oct. 31, 2025).

### 3. Plaintiff's Failure to Exhaust

In his complaint, dated October 11, 2025, Plaintiff states he filed a grievance at TSP that was "Denied etc." at the institutional level. (Doc. no. 1, p. 4.) When asked whether he appealed any denial of his grievance to the highest level in the prison, he checked the box for "yes," but when asked for the result of the appeal, he did not provide a response. (Id. at 5.) Thus, even accepting as true that Plaintiff received a response to his grievance at the institutional level in less than two weeks when the warden has forty days to respond, the failure to provide the outcome of his appeal shows that Plaintiff had not received a response from the Central Office prior to filing the instant lawsuit. Indeed, as described above, the Central Office has 120 days to provide a response. Thus, the face of Plaintiff's complaint makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit because he did not wait for a response to his appeal.

Allowing Plaintiff to decide for himself to bypass completion of the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the

9

administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not waiting for a response to his appeal would defeat the aims of the PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159. The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id. Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's complaint, indeed he concedes by failing to provide a result of his appeal, that he failed to complete the entire grievance process prior to commencing this case.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

### III. CONCLUSION

In summary, Plaintiff has accumulated at least three strikes against him and cannot satisfy the dictates of the "imminent danger" exception of § 1915(g). Thus, he fails to demonstrate that he should be excused from paying the full filing fee. Even if the Court were to accept Plaintiff does satisfy the imminent danger exception, the case is subject to dismissal because the face of Plaintiff's complaint shows that he failed to exhaust his administrative remedies prior to filing this lawsuit. Therefore, the Court **REPORTS** and **RECOMMENDS** Plaintiff's request to proceed IFP be **DENIED**, (doc. no. 2), and this case be **DISMISSED** without prejudice. If Plaintiff wishes to proceed with the claims raised in this case, he should be required to initiate a new lawsuit, which would require submission of a new complaint. Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002).

SO REPORTED and RECOMMENDED this 31st day of October, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA